IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY G. HAMPTON, JR., | No. 2:20-CV-1001-KJM-DMC-P |
| Plaintiff, | |
| v. | ORDER |
| LORI W. AUSTIN, et al., | |
| Defendants. | |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action under 42 U.S.C. § 1983. Pending before the Court is Plaintiff's complaint, ECF No. 1.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2). Moreover, the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that claims must be stated simply, concisely, and directly. See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)). These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it

rests. See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996). Because Plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard. Additionally, it is impossible for the Court to conduct the screening required by law when the allegations are vague and conclusory.

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff names the following as defendants: (1) Lori Austin, the Chief Executive Officer at the California Medical Facility (CMF); (2) S. Gates, the Chief of Health Care Correspondence and Appeals; (3) N. McIntosh, the Chief of Mental Health at High Desert State Prison (HDSP); (4) Jennifer Roy, a clinician at HDSP; (5) Welch, a clinician at HDSP; (6) Hagen, a clinician at CMF; and (7) Croshow, a clinician at CMF. Plaintiff alleges the events outlined in the complaint took place at both CMF and HDSP. See ECF No. 1, pg. 1.

Plaintiff states that he sought help from the "available B-Yard clinicians and Ad-Seg clinicians (Dr. Welch, Dr. Roy, etc.)" regarding safety concerns. Id. at 4. According to Plaintiff, he was being victimized by his cellmates and being extorted by violent gang members. See id. Plaintiff states that "custody refused to help me so I began [to] seek help threw [sic] mental help to be place [sic] in E.O.P." Id. Plaintiff states that he was told he could not be placed on E.O.P. unless he was currently taking psychotropic medications prescribed by A-Yard clinicians. See id. Plaintiff states that, while this is untrue, he nonetheless allowed himself to be placed on medication and, despite this, was still not permitted E.O.P. treatment "for the voices and suicide thoughts I was having." Id. Plaintiff states that he was assaulted and robbed by "multiple cellmates I should have never been forced to live with and eventually I had a break down which could have been prevented 10-8-19 and tried to kill myself with a razor." Id.

Next, Plaintiff states that every time he addressed his concerns with B-Yard clinicians at HDSP, he was told to speak to "custody" who refused to help. Id. at 5. Plaintiff claims that he had fears living with a cellmate due to having been molested as a child by a male cousin. See id. Plaintiff states that his request for single-cell status was denied. See id.

According to Plaintiff, he was told that if he was suicidal, he would be required to have a cellmate for his safety.  See id.  Plaintiff states that, despite conveying his concerns to prison staff, he was deliberately placed in 2-man cells with violent gang members.  See id.  Plaintiff claims that "clinicians like Dr. Roy" began to falsify his medical records and legal documents in order to minimize his safety concerns and prevent him from being placed on single-cell status.  Id. at 6.

More specifically regarding Defendant Welch, Plaintiff states that he initially spoke to HDSP B-Yard clinicians about his safety and suicide concerns and was temporarily placed in administrative segregation where he spoke with Defendant Welch, a psychologist.  See id. at 9.  According to Plaintiff, he informed Defendant Welch "how bad the voices were in my head and how I was starting to have suicidal thoughts," but Defendant Welch "did nothing to help me."  Id.

Plaintiff states the alleged conduct resulted in denial of his Eighth Amendment right to safety.  See id. at 4, 5, 6

## II. DISCUSSION

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment.  See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency."  Estelle v. Gamble, 429 U.S. 97, 102 (1976).  Conditions of confinement may, however, be harsh and restrictive.  See Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety."  Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison

official must have a "sufficiently culpable mind."  See id.

Under these principles, prison officials have a duty to take reasonable steps to protect inmates from physical abuse.  See Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir. 1982); Farmer, 511 U.S. at 833.  Liability exists only when two requirements are met:  (1) objectively, the prisoner was incarcerated under conditions presenting a substantial risk of serious harm; and (2) subjectively, prison officials knew of and disregarded the risk.  See Farmer, 511 U.S. at 837.  The very obviousness of the risk may suffice to establish the knowledge element.  See Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995).  Prison officials are not liable, however, if evidence is presented that they lacked knowledge of a safety risk.  See Farmer, 511 U.S. at 844.  The knowledge element does not require that the plaintiff prove that prison officials know for a certainty that the inmate's safety is in danger, but it requires proof of more than a mere suspicion of danger.  See Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986).  Finally, the plaintiff must show that prison officials disregarded a risk.  Thus, where prison officials actually knew of a substantial risk, they are not liable if they took reasonable steps to respond to the risk, even if harm ultimately was not averted.  See Farmer, 511 U.S. at 844.

Reading Plaintiff's complaint liberally and construing ambiguities in his favor, the Court finds that Plaintiff potentially states a cognizable Eighth Amendment claim against Defendant Welch based on Plaintiff's allegations that, despite knowledge of suicidal ideation, Defendant Welch "did nothing."

Plaintiff's complaint otherwise fails to establish a causal link between any other named defendant and the alleged Eighth Amendment violation related to safety.  To state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual connection or link between the actions of the named defendants and the alleged deprivations.  See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Vague and conclusory allegations concerning the involvement of official

4

personnel in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).  Rather, the plaintiff must set forth specific facts as to each individual defendant's causal role in the alleged constitutional deprivation.  See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

Plaintiff will be provided an opportunity to amend his complaint to clearly state how each named defendant – other than Welch – violated his rights under the Eighth Amendment.

### III.  CONCLUSION

Because it is possible that the deficiencies identified in this order may be cured by amending the complaint, Plaintiff is entitled to leave to amend.  See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc).  Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint.  See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992).  Therefore, if Plaintiff amends the complaint, the Court cannot refer to the prior pleading in order to make Plaintiff's amended complaint complete.  See Local Rule 220.  An amended complaint must be complete in itself without reference to any prior pleading.  See id.

If Plaintiff chooses to amend the complaint, Plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights.  See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  The complaint must allege in specific terms how each named defendant is involved, and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation.  See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Because the complaint appears to otherwise state cognizable claims, if no amended complaint is filed within the time allowed therefor, the Court will issue findings and recommendations that the claims identified herein as defective be dismissed, as well as such further orders as are necessary for service of process as to the cognizable claims.

///

///

Accordingly, IT IS HEREBY ORDERED that Plaintiff may file a first amended complaint within 30 days of the date of service of this order.

Dated: July 23, 2021

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE