IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY G. HAMPTON, JR.,<br><br>       Plaintiff,<br><br>    v.<br><br>E. WELSH,<br><br>       Defendant. | No.  2:20-CV-1001-KJM-DMC-P<br><br><br>FINDINGS AND RECOMMENDATIONS |

   Plaintiff, a prisoner proceeding pro se, brings this civil rights action under 42 U.S.C. § 1983.  Pending before the Court is Defendant's unopposed motion for summary judgment arguing failure to exhaust administrative remedies.  See ECF No. 55.

    The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  The standard for summary judgment and summary adjudication is the same.  See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  See

/ / /

/ / /

1    Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Under summary judgment practice, the

2    moving party

3             . . . always bears the initial responsibility of informing the district court of
              the basis for its motion, and identifying those portions of "the pleadings,
4             depositions, answers to interrogatories, and admissions on file, together
              with the affidavits, if any," which it believes demonstrate the absence of a
5             genuine issue of material fact.

6    Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

7             If the moving party meets its initial responsibility, the burden then shifts to the

8    opposing party to establish that a genuine issue as to any material fact actually does exist.  See

9    Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

10   establish the existence of this factual dispute, the opposing party may not rely upon the

11   allegations or denials of its pleadings but is required to tender evidence of specific facts in the

12   form of affidavits, and/or admissible discovery material, in support of its contention that the

13   dispute exists.  See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11.  The

14   opposing party must demonstrate that the fact in contention is material, i.e., a fact that might

15   affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S.

16   242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th

17   Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

18   return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436

19   (9th Cir. 1987).  To demonstrate that an issue is genuine, the opposing party "must do more than

20   simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record

21   taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no

22   'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).  It is sufficient that "the

23   claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions

24   of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.

25            In resolving the summary judgment motion, the court examines the pleadings,

26   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.

27   See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, see Anderson,

28   477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the

court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251.

## I. BACKGROUND

### A. Plaintiff's Allegations

This action proceeds on Plaintiff's original complaint as against Defendant Welsh only. See ECF No. 30 (District Judge order). Plaintiff alleges the events outlined in the complaint took place at both California Medical Facility (CMF) and High Desert State Prison (HDSP). See ECF No. 1, pg. 1.

Plaintiff states that he sought help from the "available B-Yard clinicians and Ad-Seg clinicians (Dr. Welsh, Dr. Roy, etc.)" regarding safety concerns. Id. at 4. According to Plaintiff, he was being victimized by his cellmates and being extorted by violent gang members. See id. Plaintiff states that "custody refused to help me so I began [to] seek help threw [sic] mental help to be place [sic] in E.O.P." Id. Plaintiff states that he was told he could not be placed on E.O.P. unless he was currently taking psychotropic medications prescribed by A-Yard clinicians. See id. Plaintiff states that, while this is untrue, he nonetheless allowed himself to be placed on medication and, despite this, was still not permitted E.O.P. treatment "for the voices and suicide thoughts I was having." Id. Plaintiff states that he was assaulted and robbed by "multiple cellmates I should have never been forced to live with and eventually I had a break down which could have been prevented 10-8-19 and tried to kill myself with a razor." Id.

///

///

3

Next, Plaintiff states that every time he addressed his concerns with B-Yard clinicians at HDSP, he was told to speak to "custody" who refused to help. Id. at 5. Plaintiff claims that he had fears living with a cellmate due to having been molested as a child by a male cousin. See id. Plaintiff states that his request for single-cell status was denied. See id. According to Plaintiff, he was told that if he was suicidal, he would be required to have a cellmate for his safety. See id. Plaintiff states that, despite conveying his concerns to prison staff, he was deliberately placed in 2-man cells with violent gang members. See id. Plaintiff claims that "clinicians like Dr. Roy" began to falsify his medical records and legal documents in order to minimize his safety concerns and prevent him from being placed on single-cell status. Id. at 6.

More specifically regarding Defendant Welsh, Plaintiff states that he initially spoke to HDSP B-Yard clinicians on July 26, 2019, about his safety and suicide concerns and was temporarily placed in administrative segregation where he spoke with Defendant Welsh, a psychologist. See id. at 9. According to Plaintiff, he informed Defendant Welsh "how bad the voices were in my head and how I was starting to have suicidal thoughts," but Defendant Welsh "did nothing to help me." Id.

Plaintiff states the alleged conduct resulted in denial of his Eighth Amendment right to safety. See id. at 4, 5, 6.

### B. The Parties' Evidence

Defendant's motion for summary judgment based on failure to exhaust is supported by a separate statement of undisputed facts (DUF), ECF No. 55-3, and the declaration of S. Gates, the Acting Chief of the Health Care Correspondence and Appeals Branch (HCCAB) for the California Correctional Health Care Services (CCHCS), with attached Exhibits A through M, ECF No. 55-4. Plaintiff has not filed an opposition, though the Court considers Plaintiff's verified complaint as his declaration.

///
///
///
///

Because Plaintiff has not opposed Defendant's motion or presented contradictory evidence, the Court accepts Defendant's summary of the evidence related to Plaintiff's inmate grievance history as follows:

> Between July 26, 2019, and May 18, 2020—the date Plaintiff filed his Complaint in this action—Plaintiff submitted 12 health care grievances: (1) LAC HC 20000667; (2) LAC HC 2000636; (3) LAC HC 20000626; (4) LAC HC 20000604; (5) LAC HC 20000603; (6) LAC HC 20000602; (7) LAC HC 20000601; (8) CMF HC 20000041; (9) CMF HC 20000001; (10) CMF HC 19001764; (11) CMF HC 19001710; (12) HDSP HC 19000683. (DUF 26.) None of those grievances allege that Dr. Welsh ignored Plaintiff's suicidal ideations. (DUF 27-38.)
> In LAC HC 20000667, Plaintiff alleged that he remained suicidal after his suicide attempt on October 8, 2019, and that mental health clinicians at California State Prison – Los Angeles (LAC) are not taking his suicidal ideations seriously. (DUF 27.)
> In LAC HC 20000636, Plaintiff alleged that on April 15, 2020, custody staff at LAC beat him and that all of his requests to see medical were denied. (DUF 28.)
> In LAC HC 20000626, Plaintiff alleged that he continued having suicidal thoughts after his October 8, 2019, suicide attempt and mental health clinicians at LAC were not adequately treating his suicidal ideations. (DUF 29.)
> In LAC HC 20000604, Plaintiff alleged medical staff at LAC are allowing inmates to pass drug needles, food, and personal infected items amongst each other and COVID-positive inmates are remaining in cells with uninfected inmates. (DUF 30.)
> In LAC HC 20000603, Plaintiff requested a copy of his COVID test results. (DUF 31.)
> In LAC HC 20000602, Plaintiff alleged that custody staff at LAC beat him on April 14, 2020, because he refused to go into a cell with a COVID-19-positive inmate, and that he tells every officer he sees at LAC that he is suicidal. (DUF 32.)
> In LAC HC 20000601, Plaintiff alleged that on April 13, 2020, medical staff at LAC failed to disinfect a blood pressure strap before checking his blood pressure. (DUF 33.)
> In CMF HC 20000041, Plaintiff alleged he had not received a Developmental Disabilities Program evaluation and requested one. (DUF 34.)
> In CMF HC 20000001, Plaintiff alleged that his mental health clinicians at the California Medical Facility (CMF), including a Dr. Croshow, refused to document that he was suffering from voices telling him to kill any cellmate he is placed with. (DUF 35.)
> In CMF HC 19001764, Plaintiff alleged that his EOP clinicians, including a Dr. Croshow, are refusing to recommend Plaintiff receive single cell status and alluding that he will hurt any cellmate he is placed with. (DUF 36.)
> In CMF HC 19001710, Plaintiff alleged that Dr. Roy at HDSP wrongly found that his mental health did not play a role in his behavior that led to a rules violation report. (DUF 37.)

///

     In HDSP HC 19000683, Plaintiff alleged that as of September 10, 2019, he was having a mental health crisis, but that mental health staff refused to see him. (DUF 38.)

ECF No. 55-1, pgs. 4-5.

## II. DISCUSSION

Defendant argues Plaintiff failed to exhaust available administrative remedies prior to filing suit, in violation of the Prison Litigation Reform Act and that, as a result, this action must be dismissed. See ECF No. 55-1.

Prisoners seeking relief under § 1983 must exhaust all available administrative remedies prior to bringing suit. See 42 U.S.C. § 1997e(a). This requirement is mandatory regardless of the relief sought. See Booth v. Churner, 532 U.S. 731, 741 (2001) (overruling Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999)). Because exhaustion must precede the filing of the complaint, compliance with § 1997e(a) is not achieved by exhausting administrative remedies while the lawsuit is pending. See McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002). The Supreme Court addressed the exhaustion requirement in Jones v. Bock, 549 U.S. 199 (2007), and held: (1) prisoners are not required to specially plead or demonstrate exhaustion in the complaint because lack of exhaustion is an affirmative defense which must be pleaded and proved by the defendants; (2) an individual named as a defendant does not necessarily need to be named in the grievance process for exhaustion to be considered adequate because the applicable procedural rules that a prisoner must follow are defined by the particular grievance process, not by the PLRA; and (3) the PLRA does not require dismissal of the entire complaint if only some, but not all, claims are unexhausted. The defendant bears burden of showing non-exhaustion in the first instance. See Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014). If met, the plaintiff bears the burden of showing that the grievance process was not available, for example because it was thwarted, prolonged, or inadequate. See id.

///
///
///

1          The Supreme Court held in Woodford v. Ngo that, in order to exhaust administrative remedies, the prisoner must comply with all of the prison system's procedural rules so that the agency addresses the issues on the merits.  548 U.S. 81, 89-96 (2006).  Thus, exhaustion requires compliance with "deadlines and other critical procedural rules." Id. at 90. Partial compliance is not enough.  See id.  Substantively, the prisoner must submit a grievance which affords prison officials a full and fair opportunity to address the prisoner's claims.  See id. at 90, 93.  The Supreme Court noted that one of the results of proper exhaustion is to reduce the quantity of prisoner suits "because some prisoners are successful in the administrative process, and others are persuaded by the proceedings not to file an action in federal court." Id. at 94. When reviewing exhaustion under California prison regulations which have since been amended, the Ninth Circuit observed that, substantively, a grievance is sufficient if it "puts the prison on adequate notice of the problem for which the prisoner seeks redress. . . ." Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009); see also Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010) (reviewing exhaustion under prior California regulations).

          Until June 1, 2020, California allowed inmates to administratively appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs., tit. 15, § 3084.1(a); Munoz v. Cal. Dep't of Corrs., No. CV 18-10264-CJC (KS), 2020 WL 5199517, at *6 (C.D. Cal. July 24, 2020). CDCR used a three-step process for grievances. Id. (describing the former three-step process). CDCR also used the three-step process for health care grievances until September 1, 2017. Id. CDCR then adopted a new two-step procedure for health care grievances (which was renumbered to its current section number in 2018). See Cal. Code Regs., tit. 15, § 3999.225–.230; see also Singh v. Nicolas, No. 18-cv-1852, 2019 WL 2142105 at *3 & nn. 1–4 (E.D. Cal. May 16, 2019) (discussing the restructured grievance procedure); Garrett v. Finander, 2019 WL 7879659, at *2–3 (C.D. Cal. Dec. 5, 2019) (describing the new grievance procedures). The first level of review is the institutional level of review. Cal. Code Regs., tit. 15, § 3999.228(a). The second level of review is the headquarters level of review. Cal. Code Regs., tit. 15, § 3999.230(a). The headquarters level is the final level of

health care grievance review. Cal. Code Regs., tit. 15, § 3999.230(h). The headquarters level decision also exhausts administrative remedies. See id.

Under the two-step procedure, inmates must submit a health care grievance on a "CDCR 602 HC" form. Cal. Code Regs., tit. 15, § 3999.227(a). First, the inmate must submit the form to the grievance office "where the grievant is housed within 30 calendar days of: (1) the action or decision being grieved, or (2) initial knowledge of the action or decision being grieved." § 3999.227(b). Second, if an inmate is dissatisfied with the institutional level disposition of their grievance, the inmate may appeal to headquarters, the Health Care Correspondence and Appeals Branch. See Cal. Code Regs., tit. 15, § 3999.229(a), 3999.230.

Defendant argues that the undisputed evidence shows that Plaintiff failed to file any grievances concerning him between July 2019 when Plaintiff allegedly spoke to Defendant about his suicidal ideation and May 2020 when Plaintiff filed suit. See ECF No. 55-1, pgs. 7-8. According to Defendant:

> Plaintiff's case proceeds solely on the claim that despite knowledge of Plaintiff's suicidal ideations between July 26, 2019, and August 1, 2019, Dr. Welsh "did nothing," at the August 1, 2019, committee meeting. (DUF 23.) Under the applicable regulations, Plaintiff was required to submit an administrative appeal within 30 days of the incident or knowing of the incident. *See* Cal. Code Regs. tit. 15, § 3999.227(b). Based on Plaintiff's own allegations, he was aware of the injury as of August 1, 2019, when Dr. Welsh allegedly "did nothing" to address his purported suicidal ideations. (DUF 4.) The undisputed evidence is that Plaintiff did not submit any grievance alleging that Dr. Welsh ignored his reported suicidal ideations between July 26, 2019, and August 1, 2019. (DUF 27-38.)
> Plaintiff submitted multiple grievances concerning his mental health treatment in 2019, but never grieved that he reported suicidal ideations to Dr. Welsh, who then failed to treat those ideations. (*Id.*) For example, in HDSP HC 19000683, Plaintiff alleged mental health staff refused to see him, not that he saw mental health professionals and reported suicidal ideations to no avail. (DUF 38.) Similarly, in CMF HC 190001710, Plaintiff alleged that non-party Dr. Roy improperly concluded that his mental health condition did not play a role in his behavior that led to an RVR, not that Dr. Welsh—or anyone for that matter—ignored his suicidal ideations. (DUF 37.) Indeed, many of Plaintiff's grievances alleged that, during the relevant time period, he would hurt other inmates if housed with a cellmate, not that he would hurt himself or attempt to commit suicide. (DUF 35-36.)
> Plaintiff's only grievances alleging suicidal ideation post-date the October 8, 2019, suicide attempt alleged in the complaint, and they do not refer to Dr. Welsh—or any mental health provider at HDSP. For example, in LAC HC 20000602, Plaintiff allegedly reported suicidal ideations to

> custody staff at LAC on or around April 14, 2020. (DUF 32.) Further, in LAC HC 20000626 and LAC HC 20000667, Plaintiff alleged that he remained suicidal after his October 8, 2019, suicide attempt and that LAC mental health staff (not HDSP where Dr. Welsh worked) were not adequately treating his suicidal ideations. (DUF 27, 29.)
> 
> Accordingly, Plaintiff did not file any grievances concerning Dr. Welsh's alleged conduct within 30 days of the alleged incident, and therefore, he failed to exhaust available administrative remedies prior to bringing this lawsuit.

ECF No. 55-1, pgs. 9-10.

Defendant's argument is persuasive. The undisputed evidence shows that Plaintiff filed 12 inmate grievances between the date he first expressed his suicide concerns – July 26, 2019 – and the date he filed this action – May 18, 2020. See ECF No. 55-3 (DUF). Defendant Welsch is alleged to be a doctor at HDSP. See ECF No. 1, pg. 2. The only grievance concerning staff at HDSP is inmate appeal no. HDSP-HC-19000683, which began as appeal no. HDSP-A-1903678 and was later assigned appeal no. HDSP-HC-19000683 as it related to healthcare. See ECF No. 55-4, pgs. 217-32 (Gates declaration, Exhibit M).

Relating to this grievance, Plaintiff first stated on September 10, 2019, as follows:

> Mental health but no one will see me. I had my building officers c/o Gomez and Barrier put in emergency referrals and it's been over 72 hours and no will see me. I've attempted to do a walk-in 4 times only to be rejected. I am on the verge of ruining my like. HDSP has caused me to have a mental breakdown. I am still in the process of appeal RVR [Rules Violation Report] disciplinaries I've been found guilty of and for some reason I have been placed in C-status. The only thing that was holding me together mentally was the ability of calling my mom and blocking out the voices in my head to do bad things with my T.V. or radio. These were my only 3 outlets that worked now they have been stripped from me and mental health is now refusing to see me or place me back on meds. I'm scared of what may happen. I need help. I can't live like this or take it much longer. Please help. This is a real emergency.

ECF No. 55-4, pg. 225 (Gates declaration, Exhibit M).

Plaintiff made no mention of Defendant Welsh, let alone that he informed Defendant Welsh of suicidal ideation but that Welsh did nothing.

/ / /

/ / /

/ / /

/ / /

9

Exhibit M to the Gates declaration also reflects the following additional statement from Plaintiff on December 5, 2019, following denial of his appeal at the institutional level:

> I'm really not sure what more to say. I am not satisfied. HDSP did not help me. I help myself. I begged and pleaded for help only to be denied and deem not to had been going through a mental health breakdown on 8-2-2019 when being forced to return to A Yard that my life was in danger at. Psych. Dr. Roy at HDSP said the voices I was hearing did not play a role in RVR I received due this incident on 8-2-2019. Therefore I was placed on C-status and endorsed to Tehachapi. This was my breaking point and HDSP and their mental health department is responsible for my breakdown.

ECF No. 55-4, pg. 220 (Gates declaration, Exhibit M).

Also part of Exhibit M is the following statement from Plaintiff dated December 5, 2019:

> I suffer from a learning disability that CDCR is refusing to assess me for but from what I believe I am not satisfied with HDSP response. I tried to get help and level care E.O.P. several times and was denied. I had to cut my body all over to get someone's attention and the only thing that's being done now is avoiding my problem. I can not do prison time with inmates who politic. I can't handle being victimized cause of my prison conviction. CDCR nor mental health provide safe yards for inmates like me to serve their sentence safely and in peace to progress in their E.O.P. treatment and therapy. Instead CDCR just bounces me from yard to yard prison to prison until eventually I break again and succeed at taking my life.

ECF No. 55-4, pg. 222 (Gates declaration, Exhibit M).

Again, Plaintiff makes no mention of Defendant Welsh or his alleged inattention to Plaintiff's suicidal ideation.

As Defendant notes, these grievances allege that no one from mental health services would see Plaintiff, not that Plaintiff was seen, informed mental health staff or Defendant Welsh of suicidal ideation, or that staff or Welsh did nothing. This is a significant distinction in that the allegation that no one would provide treatment fails to put CDCR, HDSP, or Defendant Welsh on notice of the nature of Plaintiff's claim, specifically that he was in fact seen but that prison officials did nothing in response to Plaintiff's mental health concerns. See Griffin, 557 F.3d at 1120; see also Sapp, 623 F.3d at 824.

///

///

///

10

### III.  CONCLUSION

Based on the foregoing, the undersigned recommends as follows:

1. Defendant's unopposed motion for summary judgment, ECF No. 55, be GRANTED.

2. This action be DISMISSED with prejudice for failure to exhaust available administrative remedies prior to filing suit.

3. Defendant's motion to stay merits-based discovery, ECF No. 56, be DENIED as moot.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  March 7, 2024

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE